

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GINO V. JACKSON,

    Plaintiff,

v.                                        Civil Action No. 3:09cv43

ERIC L. OLSEN, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a Virginia inmate proceeding *pro se*, filed this civil rights action and paid the full filing fee. The matter is before the Court on Plaintiff's failure to abide by the Court's directions and submit an appropriate complaint.

### I. Procedural History

Plaintiff's original complaint spanned over 50 pages, named 30 individuals as defendants, and contained 25 separate "CAUSES OF ACTION." By Memorandum Order entered on May 7, 2009, the Court informed Plaintiff that his complaint did not comply with Federal Rules of Civil Procedure 8(a)[1] and 20(a).[2] The Court further directed Plaintiff, within twenty days of the date of entry thereof, to show good cause why the original complaint should not be dismissed or to

---

[1] A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[2] When a plaintiff seeks to bring multiple claims against multiple defendants he must also satisfy Federal Rule of Civil Procedure 20(a), which provides:
    **(2) *Defendants.*** Persons . . . may be joined in one action as defendants if:
    **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
    **(B)** any question of law or fact common to all defendants will arise in the action.
Fed. R. Civ. P. 20(a).

submit an appropriate amended complaint. The Court further informed Plaintiff that if he should choose to submit an amended complaint he must briefly explain why all of the claims against the multiple defendants are transactionally related and what common question of law and fact unites all of the defendants. The Court warned Plaintiff that the failure to comply with the terms of the of the May 7, 2009 Memorandum Order would result in dismissal of the action. *See* Fed. R. Civ. P. 41(b). Thereafter, on June 12, 2009, Plaintiff submitted an amended complaint. The amended complaint is before the Court for evaluation pursuant to 28 U.S.C. §1915A, 42 U.S.C. 1997e(c), Federal Rules of Civil Procedure 8(a), 20(a), and Plaintiff's compliance with the Court's May 7, 2009 Memorandum Order.

## II. Preliminary Review

Under the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A; *see* 42 U.S.C. § 1997e(c). The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (*quoting Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded

allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle only applies to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim *showing that the pleader is entitled to relief*,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added; second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. 1950. Thus, plaintiffs can not satisfy pleading requirements with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp.*, 550 U.S. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III. Joinder Of Parties And Claims

The Federal Rules of Civil Procedure place limits on a plaintiff's ability to join multiple defendants in a single pleading. *See* Fed. R. Civ. P. 20(a). "The 'transaction or occurrence test' of the rule . . . 'permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'" *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (*quoting Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). "But, Rule 20 does not authorize a plaintiff to add claims 'against different parties [that] present[ ] entirely different factual and legal issues.'" *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (alterations in original) (*quoting Lovelace v. Lee*, No. 7:03cv00395, 2007 WL 3069660, *1 (W.D. Va. Oct. 21, 2007)). "And, a court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of [promoting convenience and expediting the resolution of disputes], but will result in prejudice, expense, or delay.'" *Id.* (*quoting Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n. 5 (4th Cir. 2007)).

The Court's obligations under the PLRA include review for compliance with Rule 20(a). *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("The district court did not question George's decision to join 24 defendants, and approximately 50 distinct claims, in a single suit. It should have done so.").[3]

---

[3] Although Rule 18(a) permits a plaintiff to "join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party," the courts cannot ignore the limitations of Rule 20(a). *George*, 507 F.3d at 607 (*quoting* Fed. R. Civ. P. 18(a)); *see* 7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2009) ("Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.").

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*Id.*; *Showalter v. Johnson*, No. 7:08cv00276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009) ("To allow [plaintiff] to pay one filing fee yet join disparate claims against dozens of parties flies in the face of the letter and spirit of the PLRA."). Furthermore, a Plaintiff cannot satisfy the requirements of Rule 20(a) with conclusory allegations of a conspiracy. *See Williams v. Raemisch*, No. 3:09cv00485, 2009 WL 3516312, at *2 (W.D. Wis. Oct. 28, 2009) (*citing Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Proctor v. Applegate*, – F. Supp. 2d –, No. 2:07cv12414, 2009 WL 3208283, at *26 (E.D. Mich. Sept. 30, 2009) ("[P]laintiffs' overarching theme of a statewide 'conspiracy' does not satisfy Rules 18 and 20."); *Robinson v. Johnson*, 3:07cv00449, 2009 WL 874530, at *1 n.2 (E.D. Va. Mar. 26, 2009). With these principles in mind, the Court turns to the allegations in the amended complaint.

### III. Summary of Allegations and Claims

The core of Plaintiff's amended complaint is that he is the victim of a "racially motivated conspiracy . . . initiated by defendants Olsen, Hardiman, and Chichester as a result of defendant Chichester's personal interest in advocating for defendant Patricia Anne Jackson." (Am. Compl. 1) Plaintiff contends that Defendant Jackson initiated the criminal charges "so that she could abscond with secreted marital monies in excess of $500,000 and to gain financial advantage in the matter of divorce." (Am. Compl. 1.) Plaintiff contends the conspiracy began in 2004 in his criminal proceedings and continued through his divorce proceedings and involved, among others,

5

the following 17 individuals and entities that Plaintiff has named as defendants: Daniel M. Chichester, Commonwealth Attorney for Stafford County, Virginia; Eric L. Olsen, Deputy Commonwealth Attorney for Stafford County; Phong Michael Hardiman, Assistant Commonwealth Attorney for Stafford County;[4] J. Bruce Strickland, a private attorney; R. Shawn Majette, Guardian ad litem (GAL) appointed by the Circuit Court of Stafford County; Leigh S. Gettier, GAL appointed by the Circuit Court of Stafford County; Barbara G. Decatur, Clerk of Stafford County Circuit Court; Jane Doe Hall, bailiff with the Stafford County Sheriff's Office; Sheriff's Deputy John Doe Rodriguez; Charles E. Jett, Sheriff for Stafford County; Stafford County, Virginia; Patricia Anne (Kowalski) Jackson, Plaintiff's now ex-wife; David Hargett, counsel who represented Plaintiff in conjunction with a state petition for a writ of habeas corpus; Adam B. Crickman, counsel for Plaintiff during his divorce proceedings; Avery Lewis Lowery, Jr.; James J. Ilijevich, a public defender in Stafford County; and Marian Beckett, Assistant Bar Counsel, with the Virginia State Bar. (Am. Compl. 3.) The amended complaint is twenty-four pages and contains eleven separate "CAUSE[S] OF ACTION." Furthermore, many of the Causes of Action contain more than one discrete claim for relief against the individual defendants. In any event, one does not have to proceed beyond Plaintiff's first two Causes of Action to appreciate that the amended complaint does not comply with Federal Rules of Civil Procedure 8(a), 12(b)(6), and 20(a). As does much of the amended complaint, Plaintiff's first two causes of action, presented verbatim below, consist almost entirely of legal conclusions:

---

[4] For ease of reference, Chichester, Olsen, and Hardiman will be referred to collectively as the Prosecutor Defendants.

## FIRST CAUSE OF ACTION - Conspiracy

15. That defendants Chichester and Olsen conspired by planning to have Stafford County Sheriff's Deputies harass and intimidate the plaintiff as a party in criminal litigation in March 2004, as a result of racially animus. This invidious discrimination prevented the plaintiff from fully and fairly participating as a party at the hearing. The plaintiff was injured in the security of his person by these acts, and did not discover the complicity between defendants Chichester and Olsen with his defense lawyers David P. Baugh and Kristie L. Kane to deprive him of effective assistance of counsel to conceal prosecutorial misconduct until he studied procedural and substantive due process and learned they constitute claims under Title 42, § 1983 in 2009.

16. In March 2004, Sheriff's Deputy Jane Doe (Hall) and Sheriff's Deputy First Sergeant John Doe assaulted and battered the plaintiff. The First Sergeant bent down and held the legs of the plaintiff's chair while Sheriff's Deputy Jane Doe (Hall) struck the plaintiff across his chest without legal cause or justification when he entered the court room in shackles.

17. The plaintiff was at the hearing to respond to the motions by David P. Baugh and Kristie L. Kane's to withdraw as defense counsel where Judge Ann Hunter Simpson presided.

18. Defendant J. Bruce Strickland had informed Attorney Adam B. Crickman that he was at the plaintiff's criminal trial on January 24-26, 2005 and that he and other lawyers were aware that Baugh and Kane didn't defend the plaintiff during the trial. When the plaintiff questioned Baugh and Kane about this disclosure they immediately motioned the court to withdraw.

19. During the hearing, Commonwealth Attorney Phong Michael Hardiman misrepresented to Judge Simpson that there were complex motions pending from the defense to prevent them from being allowed to withdraw. The plaintiff was able to tell the court that the defense was guilty of malpractice, despite the intimidation by the bailiffs and she allowed them to withdraw as counsel.

20. The plaintiff reported the police intimidation to a male Caucasian Bailiff in the holding cell area after the hearing and to Rappahannock Regional Jail transportation Officer Shabazz along with the plaintiff's counselor, Mrs. Gallagher. No investigative actions were taken by any of these actors.

21. The plaintiff reported the incident to Judge Ann Hunter Simpson at the next criminal hearing in late March or early April 2005. Judge Simpson assigned Deputy Public Defender James Ilijevich to defend the case after allowing Baugh and Kane to withdraw. Defendant Ilijevich was also designated to investigate the matter, but he abandoned the representation without ever accomplishing the task.

22. Defendant Ilijevich withdrew as counsel after he furthered the conspiracy by Chichester, Olsen, Hardiman, Baugh, and Kane by having one of the plaintiff's key defense witnesses, Mr. Willie Porter, Jr. arrested outside the court room after one of the plaintiff's criminal hearing, while waiting for to meet defendant Ilijevich at

7

Ilijevich's request. He also attempted to get the plaintiff's only copy of telephone communications between Daniel M. Chichester and defendant Patricia Jackson that occurred prior to the April 18, 2004 altercation between her and the plaintiff. There were also telephone records of communications after normal working hours and weekends between Hardiman and Ms. Jackson. Ilijevich begged the plaintiff to not show the phone records to Judge Earnest P. Gates. This act was done to intimidate Mr. Porter from providing any further assistance to the plaintiff, which eventually occurred through repeated acts of this nature in the criminal and related civil matters.

23. As a direct and proximate result of the above described unlawful, acts the defendants were successful in the purpose of their conspiracy and the plaintiff suffered damage to his security, property, and emotional damage; all in violation of his rights under the laws and Constitution of the United States, in particular the First, Fifth, Sixth, Eighth, and Fourteenth Amendments thereof and 42 U.S.C. §§ 1983 and 1985.

24. The aforementioned defendants acted to deprive the plaintiff of the due process and equal protection of the law based upon the plan and acts in furtherance of their conspiracy to conceal judicial misconduct. The plaintiff was greatly humiliated; injured in his reputation, injured in his property; and has suffered great pain, emotional distress, and mental anguish all to plaintiff's damage in the sum of $200,000.00.

## SECOND CAUSE OF ACTION - Conspiracy

25. That on June 19, 2006, Judge H. Harrison Braxton, Jr. proceeded with the final divorce hearing without "notice" or a stenographer and where the plaintiff was not represented by either counsel or the required GAL as a member under a disability, per Section 8.01-9(A) of the Code of Virginia (1950) in a conspiracy planned and enacted to conceal judicial misconduct by defendants Chichester, Olsen, Hardiman, Nolan M. Jackson, Patricia (Kowalski) Jackson, Adam B. Crickman, Avery Lewis Lowery, Jr., and J. Bruce Strickland.

26. The conspiracy was initially motivated based upon the personal advocacy of Stafford County Commonwealth Attorney Daniel M. Chichester for defendant Patricia Jackson and racial animus against the plaintiff for being a black man accused of felony assault and abduction against his white wife. The invidious discrimination included the actions described above and denying the plaintiff his right to obtain discovery, present evidence, obtain and present witnesses, and to sue based upon the plaintiff's grounds for divorce.

27. The conspiracy was perpetrated by defendant Avery Lewis Lowery, Jr. withdrawing as replacement counsel for defendant Adam B. Crickman, without ever becoming attorney of record and expending $7,000.00 in approximately 60 days without achieving a single objective of the representation; thereby creating a financial hardship for the plaintiff to retain another lawyer. Defendant Lowery was blocked from becoming the attorney of record by contrived objections by defendant J. Bruce Strickland; while Adam B. Crickman concurrently acted to prevent the plaintiff from

8

terminating his pre-existing attorney-client contract him and refused to return approximately $1,200.00 of the plaintiff's trust monies. Mr. Crickman failed to advance the matter for divorce from December of 2004 through receiving notice from the plaintiff in June 2005 that he had six months to finalize the matter of divorce.

28. Throughout his tenure, defendant Crickman acted to block the plaintiff's efforts to gain evidence needed to prove his grounds for divorce through terminating investigative actions with Linda Cheatham, a forensic accountant and by having his business associate, Ralph Bennett breach an April 2005 contract to investigate missing marital monies in excess of $500,000 after receiving a $1,000.00 retainer. Defendant Crickman was nonresponsive to the plaintiff's continued inquiries about the status of the investigation from April through November 2005, when he provided the plaintiff Mr. Bennett's telephone number to determine what was going on with the investigation. Mr. Bennett refused to investigate the matter in November 2005 after spending approximately $153 of the retainer by one of his investigators, Mr. Edmund and wasting five months having the plaintiff believe he was investigating the matter.

29. During the June 19, 2006 unnoticed divorce trial, J. Bruce Strickland and Judge H. Harrison Braxton, Jr. attempted to trick the plaintiff into keeping defendant Crickman as counsel. Judge Braxton bifurcated the equal distribution portion of the divorce, after the plaintiff informed him that Adrian Spragues, the Operations Officer of Lunenburg Correctional Center had witnessed the video teleconferenced trial; Judge Braxton then recused/disqualified himself. Due to the plaintiff's allegations of racial discrimination, Judge Braxton had Judge Richard D. Taylor, Jr. a black judge from the 13th Judicial Circuit replace him, and Judge Taylor perpetuated the conspiracy to deprive the plaintiff of due process and equal protection of the law. Judge Braxton signed the divorce decree on August 2, 2006 over the plaintiff's written objections.

30. As a direct and proximate result of the above described unlawful and malicious acts, the defendants advance the objective of the conspiracy by preventing the plaintiff from gaining evidence in the divorce of the misconduct in the criminal matter and by gaining advantage in the divorce for Ms. Jackson. The plaintiff suffered damage to his security, property, and emotional damage; all in violation of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments and Title 42 USCS, §§ 1981, 1983, 1985, and 1988.

31. As a result of both nongovernmental discrimination and impairment under color of State law, the plaintiff was greatly humiliated; injured in his reputation; injured in his property; and has suffered great pain, mental anguish, and emotional distress all to plaintiff's damage in the sum of $100,000.00.

(Am. Compl. 5-9.) Plaintiff's remaining claims proceed in a similar fashion. In his Third Cause of Action, Plaintiff complains that, in 2007 and 2008, David Hargett performed poorly while

litigating Plaintiff's state petition for a writ of habeas corpus. In his Fourth Cause of Action, Plaintiff contends Hargett's poor performance shows that Hargett had joined the Prosecutor Defendants in a conspiracy to cover up their misconduct. In the Fifth and Sixth Causes of Action, Plaintiff recasts his complaints against Hargett as a breach of contract and "Misrepresentation." (Am. Compl. 12.)[5] In his Seventh Cause of Action, Plaintiff complains about various violations of his rights, which occurred during his divorce proceedings in 2008. For example, Plaintiff alleges that:

> Judge Walter J. Ford acted in conspiracy with Strickland, Patricia (Kowalski) Jackson, Gettier, Olsen, Chichester, and Hardiman by denying the plaintiff his right to submit evidence of extrinsic or collateral fraud by defendants Gettier and Strickland. Judge Ford similarly acted in conspiracy with defendants R. Shawn Majette and Adam B. Crickman by depriving the plaintiff of his right to meaningfully participate in the matter of **Jackson v. Crickman and Bennett**, and dismissed [that case] with prejudice.

(Am. Compl. 16-17.) In his Eighth Cause of Action, Plaintiff contends that Marian Becket violated Plaintiff's rights by failing to prosecute Plaintiff's bar complaints against most of the attorneys involved in Plaintiff's divorce and criminal proceeding. Plaintiff contends that Becket must have joined the greater conspiracy. Plaintiff's Ninth Cause of Action concerns acts of alleged harassment by Sheriff's Deputies and other individuals in conjunction with a judgment lien. In his Tenth Cause of Action, Plaintiff contends that the harassments with respect to the

---

[5] Beginning with his Fourth Cause of Action, Plaintiff engages in "shotgun pleading," wherein each new cause of action incorporates all of the prior allegations into each subsequent claim for relief. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279-80 (11th Cir. 2006) (*citing Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001)). Because such pleadings require the Court to sift through each paragraph of a complaint as to any allegation that might pertain to subsequent counts, so called shotgun pleading "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Id.* at 1279 (internal quotation omitted.)

judgment lien were "at the impetus of Sheriff Charles E. Jett and Commonwealth Attorney Daniel M. Chichester to intimidate" Plaintiff. (Am. Compl. 22.) In his Eleventh Cause of Action, Plaintiff contends that the harassment with respect to the judgment lien was the "proximate result of an ongoing racially motivated conspiracy, planned and enacted by defendants Daniel M. Chichester, Eric L. Olsen, Phong Michael Hardiman, Joseph T. Brown, David B. Hargett, Patricia (Kowalski) Jackson, J. Bruce Strickland, Charles C. Cosby, Jr., Avery Lewis Lowery, Jr., Charles E. Jett, and Leigh S. Gettier. The conspirators have participated to aide defendant Patricia Jackson gain financial advantage in the matter of divorce and to conceal serious prosecutorial, judicial, and lawyer misconduct in all judicial matters relating to the plaintiff." (Am. Compl. 23.) In his Twelfth and final Cause of Action, Plaintiff complains that Defendants Olsen, Jackson, and Decatur "abuse[d] the judicial process by using the criminal process to intimidate the plaintiff as a party . . . and to gain financial advantage for Ms. Jackson through removing a judgment lien." (Am. Compl. 23.)

## IV. Analysis

### A. Plaintiff has not satisfied the requirements of Rule 8(a) and 20(a)

It is apparent that Plaintiff has submitted the sort "mishmash of a complaint" that the rules governing joinder of parties aim to prevent. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff alleges:

> [J]oinder of multiple parties is warranted under FRCP 19 and 20(a), due to there being a question of a common fact or point of law involving a series of acts to deprive the plaintiff of due process and equal protection of the law by multiple parties. The racially motivated conspiracy was initiated by defendants Olsen, Hardiman, and Chichester as a result of defendant Chichester's personal interest in advocating for defendant Patricia Anne Jackson.

(Am. Compl. 1.) Plaintiff, however, has not stated any plausible claim for a conspiracy to deprive Plaintiff of his civil rights. To plead a violation of 42 U.S.C. § 1985, a plaintiff "must demonstrate with specific facts that the defendants were 'motivated by a specific class-based, invidiously discriminatory animus to [] deprive the plaintiff[] of the equal enjoyment of rights secured by the law to all.'" *Francis v. Giacomelli*, 588 F.3d 186, 196-97 (4th Cir. 2009) (first alteration in original) (*quoting Simmons v. Poe,* 47 F.3d 1370, 1376 (4th Cir. 1995)). Because Plaintiff's allegation of a conspiracy "amounts to no more than a legal conclusion, on its face it fails to assert a plausible claim." *Id.* at 197 (*citing Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *Gooden v. Howard County, Md.*, 954 F.3d 960, 969-70 (4th Cir. 1992)); *see Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009) (dismissing conclusory allegations of a conspiracy) (*citing Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir 1990)).

To the extent Plaintiff seeks to allege a conspiracy under 42 U.S.C. § 1983, his amended complaint is similarly deficient. *Ruttenberg v. Jones*, 283 F. App'x 121, 131-32 (4th Cir. 2008) (No. 07-1037), *available at* 2008 WL 2436157 at *8. In order to satisfy his pleading burden with respect to a conspiracy, Plaintiff "needed to plead facts that would 'reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.'" *Id.* at 132 (*quoting Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). "[T]he bare, conclusory allegation that the [D]efendants conspired to violate his constitutional rights" is insufficient. *Id.* Accordingly, Plaintiff's broad claims of an overarching conspiracy, which encompasses all of the named defendants, will be DISMISSED WITHOUT PREJUDICE.

Absent a plausible claim of conspiracy, Plaintiff has failed to articulate a common question of law and fact for all of the named defendants. *See* Fed. R. Civ. P. 20(a). Furthermore, it is apparent that Plaintiff's various causes of action do not arise "out of the same transaction, occurrence, or series of transactions or occurrences." *Id.* Rather, his criminal proceedings, domestic proceedings, postconviction proceedings, and bar proceedings constitute disparate transactions and occurrences for purposes of the joinder of parties.[6]

Plaintiff's amended complaint raises a variety of claims against many defendants. The claims arise from separate events which involve interactions with Plaintiff. "As such, this [amended] complaint comprises multiple law suits, rather than one suit." *Canada v. Ray*, No. 7:08cv00219, 2009 WL 2448557, at *2 (W.D. Va. Aug. 10, 2009) (concluding inmate's amended complaint amounted to a "running list of ... grievances"). Under the PLRA, Congress sought to ensure "that the flood of nonmeritorious [prisoner] claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203 (2007) (*citing Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). The requirement that inmates must pay the full filing fee for each separate suit, *see* 28 U.S.C. 1915(b)(1), is one of the PLRA's key "reforms designed to filter out the bad claims and facilitate consideration of the good." *Id.* at 204. To allow an inmate, such as Plaintiff, to "package many lawsuits into one complaint exempts him from such a cost, benefit analysis and thus undercuts the PLRA." *Canada,* 2009 WL 2448557, at *3.

---

[6] The Court does not suggest that the whole spectrum of Plaintiff's criminal or domestic proceedings constitutes "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a).

13

## B. Remedy for Misjoinder and Failure to Comply with Rule 8(a)

Federal Rule of Civil Procedure 21 provides, "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.[7] Plaintiff, however, also has failed to comply with Federal Rule of Civil Procedure 8(a) and the Court instructions, despite the Court's warning that such a failure would result in dismissal of the action under Federal Rule of Civil Procedure 41(b). That latter failure provides the Court with authority to employ a wide range remedial action in order to conserve scarce judicial resources.[8]

Considering the paucity of factual allegations in the amended complaint, the inchoate nature of Plaintiff's legal theories for relief, and the shotgun nature of his pleadings, it would be impractical to attempt to sever the entirety of the amended complaint into discrete groups of reasonably related claims and allow them to proceed separately. Therefore, the Court will employ procedures similar to those used by other District Courts when confronted with prisoner

---

[7] Where statute of limitations concerns arise, courts should sever rather than simply dismiss the misjoined claims or parties. *See Strandlund v. Hawley*, 532 F.3d 741, 745-46 (8th Cir. 2008) (*citing DirecTV, Inc. v. Leto*, 467 F.3d 842, 846 (3d Cir. 2006); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)). If Plaintiff acts promptly, the dismissal without prejudice of Plaintiff's claims should not pose statute of limitations problems for Plaintiff in light of the tolling provision found in section 8.01-229(E)(1) of the Virginia Code. That statute provides:
> [I]f any action is commenced within the prescribed limitation period and for any cause abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period.

Va.Code Ann. § 8.01-229(E)(1) (West 2009). The provision applies in § 1983 actions. *See Canada* 2009 WL 2448557, at *3 n.1; *see also Tim Cheng-Chien Chang v. Burford*, No. 85-2224, 1986 WL 17844, at *2 (4th Cir. Oct. 9, 1986).

[8] *See Ballard v. Carlson*, 882 F.2d 93, 95-96 (4th Cir. 1989); *see also Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437-38 (3d Cir. 2007) (No. 07-3073), *available at* 2007 WL 3194502, at *1.

complaints that do not comply with Rules 8(a) and 20(a) of the Federal Rules of Civil Procedure.[9] The Court will only address on the merits in this action Plaintiff's claims set forth in his First Cause of Action.[10] Accordingly, the action will proceed only on the claims set forth in his First Cause of Action against the defendants identified in paragraphs 15 through 24. Plaintiff's other claims in his remaining Causes of Action will be DISMISSED WITHOUT PREJUDICE to refiling new complaints in new suits that comport with Federal Rules of Civil Procedure. If Plaintiff does not file a second amended complaint with eleven (11) days of the date of entry hereof, the Court will then proceed to review the claims in the First Cause of Action under 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).

If Plaintiff wishes to file a second amended complaint, he must submit such a complaint within eleven (11) days of the date of entry hereof. *See Williams v. Wilkerson*, 90 F.R.D. 168 (E.D. Va. 1981). Such complaint must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to each claim against each defendant. Plaintiff must also

---

[9] *See Canada*, 2009 WL 2448557, at *3 (*citing Showalter v. Johnson*, No. 7:08cv00276, 2009 WL 1321694 * 4 (W.D. Va. May 12, 2009); *Muehl v. Thurmer*, No. 09cv16, 2009 WL 249978 (W.D. Wis. Feb. 2, 2009); *Banks v. Adler*, No. 09cv009, 2009 WL 330146 (W.D. Wis. Feb. 9, 2009); *Pruden v. Superintendent*, No. 3:07cv0604, 2008 WL 2229481 (M.D. Pa. May 28, 2008)).

[10] Such a procedure fosters the objectives of the Rules of Civil Procedures of expediting the resolution of disputes, without further squandering scarce judicial resources on "disputes that are not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279-80 (11th Cir. 2006); *see Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008). The Court selects First Cause of Action because Plaintiff's subsequent Causes of Action become increasingly dependent upon the allegations in the prior Causes of Action. Furthermore, because Plaintiff appears intent on eventually litigating the majority of his claims, it is appropriate in this action to address the earliest transaction that gives rise to his claims. In any event, should Plaintiff wish to pursue some other Cause of Action, Plaintiff is free, within eleven (11) days of the date of entry hereof, to file a second amended complaint, limited to a different set of reasonably related claims.

15

state what civil rights he believes each defendant violated and explicitly state how said defendant's actions violated each constitutional right. Plaintiff may not name more than one defendant in his second amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant, and involves a common question of law or fact. *See* Fed. R. Civ. P. 20(a)(2). To the extent Plaintiff names more than one defendant, he must state on the first page of the second amended complaint the common question of law or fact for all of the defendants. Any second amended complaint will supplant his current complaint and all prior submissions. Any second amended complaint must stand or fall of its own accord. If Plaintiff submits a second amended complaint that does not comply with above directives, the Court will deny his attempt to amend and proceed to address the claims set forth in his First Cause of Action in the amended complaint.

Defendants Lowery, Hargett, and Stafford County have filed motions to dismiss. Plaintiff does not name these individuals or entities as defendants in his First Cause of Action. Accordingly, the motions to dismiss (Docket Nos. 16, 18, 20, 35, 38, 40) will be DENIED WITHOUT PREJUDICE AS MOOT. Additionally, Plaintiff's motion for extension of time to respond to Defendant Lowery's motion to dismiss (Docket No. 26) will be DENIED AS MOOT.

An appropriate Order shall issue.

Date: 3-1-10
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge